1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8

9    United States of America,

10                    Plaintiff/Respondent,

11    v.

12    Gary Steven Christensen,

13                    Defendant/Movant.

14

No.   CV-18-08235-PCT-DGC (DMF)
      CR-14-08164-PCT-DGC

**REPORT AND RECOMMENDATION**

15

16    **TO THE HONORABLE DAVID G. CAMPBELL, SENIOR UNITED STATES**

17    **DISTRICT JUDGE:**

18            Gary Steven Christensen ("Movant" or "Christiansen") is an inmate detained at the

19    Tucson, Arizona Federal Correctional Institution.  (Doc. 11 at 1)[1]  On September 25, 2018,

20    Movant filed through counsel a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or

21    Correct Sentence by a Person in Federal Custody ("Motion").  (Doc. 1)  The Court granted

22    Movant's unopposed motion to amend or correct the Motion.  (Doc. 10)  Movant filed his

23    Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a

24    Person in Federal Custody ("Amended Motion") through counsel on January 14, 2019.

25

26    [1] Citations to the record indicate documents as displayed in the official electronic document
      filing system maintained by the District of Arizona.  Citations to documents within
27    Movant's criminal case CR-14-08164-PCT-DGC are denoted "CR Doc."  Citations to
      documents in Movant's instant § 2255 matter CV-18-08235-PCT-DGC (DMF) are denoted
28    "Doc."

(Doc. 11)  Respondent filed its response on April 12, 2019 (Doc. 8), after which Movant filed a reply, also through counsel, on June 12, 2019 (Doc. 17).  For the reasons set forth below, the undersigned Magistrate Judge recommends the Court deny the Amended Motion without conducting an evidentiary hearing.

## I.    SUMMARY OF COURT PROCEEDINGS

On September 16, 2014, Movant was indicted under the Internal Revenue Code, 26 U.S.C. § 7201 et seq., on seven counts of evasion of assessment, five counts of filing a false return, and two counts of willful failure to file a return.  (CR Doc. 1 at 1-12)  On May 11, 2016, the case went to trial before a jury.  (CR Doc. 83)  On May 20, 2016, the jury found Movant guilty on Counts 1 through 7 for willful evasion of tax assessment, not guilty on Counts 8 through 12 for willfully filing false tax returns, and guilty on Counts 13 and 14 for willful failure to file tax returns.  (CR Doc. 101 at 1-4)  Movant moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) based on claimed insufficiency of the evidence and on an alleged violation of the Confrontation Clause due to IRS Special Agent Klepper's testimony and the admission into evidence of some summary charts.  (CR Doc. 110)  The Court denied the motion for judgment of acquittal by Order dated August 4, 2016.  (CR Doc. 127)

On October 25, 2016, the Court sentenced Movant to 42 months of imprisonment on Counts 1 through 7 and to 12 months of imprisonment on Counts 13 and 14, with the sentences to run concurrently.  (CR Doc. 146 at 1)  Movant was also sentenced to concurrent terms of supervised release upon release from imprisonment for 3 years on Counts 1 through 7 and for 1 year on Counts 13 and 14.  (*Id.*)

Movant filed a notice of appeal with the Ninth Circuit in October 2016.  (CR Doc. 143)  He argued that the district court's "admission of exhibits that his lawyer stipulated were admissible violated his Confrontation Clause rights," that the court's determination of his sentencing range was abuse of discretion, and that the "jury was not instructed on his defense."  (CR Doc. 166-1 at 2)  In a December 1, 2017, memorandum decision, the Ninth Circuit affirmed the District Court.  (*Id.* at 1-3)

At trial, Movant was represented by retained counsel Marc Jeffrey Victor.   On appeal, Movant was represented by retained counsel Michael Louis Minns and Ashley Blair Arnett.   Retained counsel Brandon Creighton Sample represents Movant in these habeas proceedings.

## II.    MOVANT'S HABEAS GROUNDS

Movant asserts four grounds for relief in his Amended Motion.  (Doc. 11 at 4-9) All of the grounds assert ineffective assistance of counsel, and all of the grounds arise from trial counsel's performance, although in Ground Three, Movant alleges his appellate counsel was also ineffective for not arguing the ground as an issue on appeal.

In Ground One, Movant claims asserts his trial counsel's performance was deficient because counsel allegedly kept his intended trial strategy a secret from Movant.  (Doc. 11 at 4; Doc. 11-1 at 12-15)  Movant further claims he was prejudiced because he would have fired his trial counsel "on the spot" (Doc. 11-1 at 15) if before trial Movant had known of counsel's trial strategy.

In Ground Two, Movant argues that his trial counsel's concession that Movant did not pay income taxes was a full admission of guilt that violated Movant's right to maintain his innocence.  (Doc. 11 at 5-6; Doc. 11-1 at 16-19)

In Ground Three, Movant complains that trial and appellate counsel were "ineffective for failing to object to the court's involuntarily imposed hybrid representation arrangement, and for not arguing this issue on direct appeal."  (Doc. 11 at 7-8; Doc. 11-1 at 19-21)  This ground stems from the trial court having allowed trial counsel to file Movant's *pro per* pretrial motion regarding jurisdiction during trial counsel's representation of Movant.

In Ground Four, Movant asserts that trial counsel was ineffective "for failing to explain to [Movant] that he was required to object to the stipulated admission of exhibits in order to preserve [Movant's] Confrontation Clause rights."  (Doc. 11 at 8-10; Doc. 11-1 at 21-24)

### III.   FACTS PERTINENT TO HABEAS GROUNDS

####    A.    Movant's November 15, 2015 letter to counsel

Movant attached to his Amended Motion a letter dated November 15, 2015, from Movant to trial counsel.  (Doc. 11-3 at 2-3)  In this pretrial correspondence, Movant addressed what he perceived to be his trial counsel's statements during a meeting held a few days prior.  Movant wrote that he believed counsel intended "to pass on cross-examination of the government and allow all their evidence without objection."  (*Id.* at 2) Movant expressed his extreme displeasure and disappointment with this proposed approach.  (*Id.*)  Movant stated, "I was well aware of the fact that the 'usual' criminal tax defense is *Cheek*[2], yet I believe personally that such a seriously flawed single-theory defense is senseless."  (*Id.*)  Movant explained that he did not understand why counsel would forgo "any opportunity to probe and question the government's witnesses as regards the very facts that may well raise the reasonable doubt on every element of the prosecution's case."  (*Id.*)  Movant expressed his concern that by not objecting to perceived inadmissible evidence or testimony, his defense would not be able to preserve disputed issues of fact for appeal and would lose the chance to establish that government witnesses were unable to clarify federal tax regulations for the jury, helping to establish a legitimate dispute about Movant's position on tax laws.  (*Id.*)

In the letter, Movant referenced an article written by Michael Minns, a criminal tax defense lawyer,[3] about cross-examination of tax defense witnesses.  (*Id.* at 3)  Specifically, Movant wrote:

> I hope you have taken the opportunity to study the article that Michael Minns
> wrote about cross-examination of tax defense witnesses.  He does not lose
> credibility with the jury by asking the questions, he wins cases.

[2] *Cheek v. United States*, 498 U.S. 192 (1991).

[3] Later, Mr. Minns was Movant's appellate counsel in the Ninth Circuit appeal from Movant's conviction and sentence in this case.  *See United States v. Christensen*, 705 Fed.Appx. 599, 599 (9th Cir. 2017).

(*Id.*)  Movant closed out the letter by stating that if counsel was "unwilling to pursue a complete affirmative defense including objections to legal conclusions and cross examination as you promised, then I need to know that from you." (*Id.*)

## B.   Counsel's e-mail reply to Movant's November 15, 2015 letter

Trial counsel e-mailed Movant on November 15, 2015, replying to Movant's letter of the same date. (Doc. 11-4 at 2)  He told Movant that he had "simply offered a possible strategy based" on what trial counsel knew of the case. (*Id.*)  Counsel wrote, "If you want to pursue a different strategy that's fine." (*Id.*)  Counsel further reported that he had begun reading Michael Minns' article and planned to finish it soon. (*Id.*)  Counsel said he was willing to associate Minns and was "happy to pursue his trial strategy so long as you agree to it," acknowledging that it was Movant's case and Movant's "freedom that is on the line." (*Id.*)

## C.   November 16 and 17, 2015 e-mails

On November 16, 2015, trial counsel relayed to Movant the status on plea negotiations and requested direction on whether Movant wished for him to continue with the negotiations. (Doc. 11-7 at 2)  Movant responded on November 17, 2015, that he was not willing to make the expected disclosures required by the proposed plea agreement, nor was he willing to file back taxes. (*Id.*)  Movant expressed that showing "contrition for committing a crime" that he "DID NOT COMMIT" was beyond what he was willing to do. (*Id.*)  Movant directed counsel "to stop plea negotiations, at this time," leaving open evaluation of plea offers from the prosecutor "as they arise." (*Id.*)  Movant directed counsel "begin pretrial preparations." (*Id.*)

## D.   Counsel's November 25, 2015 letter

On November 25, 2015, Movant's trial counsel then wrote Movant a detailed four-page, single-spaced letter which emphasized that the case had reached a point at which Movant would need to decide whether to continue to pursue a plea agreement or instead forge ahead with trial preparation. (Doc. 11-9 at 1-5)  Counsel wrote that he was "close to securing a plea offer … which would dismiss all felonies and allow plead[ing] to three

misdemeanor offenses to entirely resolve this criminal prosecution." (*Id.* at 1) Counsel advised Movant that a plea "would certainly require you to admit to knowingly failing to file required tax returns." (*Id.*) Counsel reminded Movant, "I have told you on many occasions that rejecting a misdemeanor resolution and risking a trial with years of potential prison seems much too high of a risk to me. However, I have been wrong before." (*Id.* at 2)

Counsel's November 25, 2015, letter was detailed not only about a potential misdemeanor plea resolution, but also about legal issues and trial strategy. Counsel wrote the letter more than six months before the start date of the jury trial. Counsel advised Movant:

> [B]ased on our research we have concluded that any legal argument we raise asserting you are not legally required to pay taxes will fail and likely be determined to be frivolous…. I have personally discussed your case with both Mac MacPhersen and Jason Silver separately. Both are highly experienced tax attorneys and both are independently convinced your legal arguments will fail. Both are happy to meet with you in person if you are interested.
>
> Even Peter Gibbons[4] ultimately concluded the court will find you were legally obligated to pay tax. It is enlightening to consider that even Larry Becraft[5], who was sanctioned for bringing a similar argument, will not state he ever advised you that the tax law does not apply to citizens earning income domestically. Given all this, I hope you are now convinced the court will not dismiss your case upon finding you were not obligated to pay tax.

(*Id.* at 1)

Counsel outlined the focused strategy he intended to employ at trial. (*Id.* at 2) He declared he believed that Movant had "a viable *Cheek* defense at trial. As you know, the

---

[4] Movant attests in his September 2018 declaration that Mr. Gibbons is an attorney from Carson City, Nevada. (Doc. 11-2 at 3)

[5] In his September 2018 declaration, Movant states that Larry Becraft is an attorney he had originally retained to represent him, but that he had discharged Mr. Becraft "after learning the Becraft's 'style' of defense in criminal tax matters was to agree to the Government's evidence, but argue that the defendant's conduct was not 'willful.'" (Doc. 11-2 at 1)

*Cheek* defense is actually a recognized legal defense which argues the Government can't prove you 'willfully' failed to pay tax because you sincerely believed you were not legally obligated to pay tax." (*Id.*) Counsel averred that he believed Movant was "convinced, for many different reasons and by many different sources," that he had no legal obligation to pay federal taxes, and that Movant continued to maintain this belief "despite all our research and despite the opinions of other qualified attorneys." (*Id.*)

In the letter, counsel discussed an article by attorney Michael Minns that Movant had asked counsel to read as instructive. (*Id.* at 3) Counsel informed Movant that he persisted in the belief that willfulness should "be the focus of your trial." (*Id.*) Discussing his planned approach to cross-examining witnesses, counsel wrote:

> [Minns'] statements appear similar to the strategy I proposed to you previously where he states, "While the issue of tax return accuracy is often a question of fact, the great weight of the defense effort always must be on the issue of willfulness, and it must be in the background of every single cross-examination question." As I have also said to you, Minns also agrees, "Now, the general rule is that you should pass on cross examining a witness you cannot harm. Why let the fact finder focus on testimony that does not help your case?" I couldn't agree more."

(*Id.*) Counsel wrote that perhaps "the most instructive portion of Minns' discussion was based on a tax litigation case that counsel characterized as "similar if not identical to [Movant's] case." (*Id.*) Counsel explained:

> Minns lays out the situation by stating, "[the defendant] had failed to file tax returns in many years, although he had earned enough income to require filing. *His only legal defense was that he did not believe he was required to file* – a sound legal defense if the belief was held honestly and in good faith." . . . I find it critically important to note that Minns did not identify any other legal defense for [the defendant]. Minns did not say [the defendant] had any legal defense proposing that he was not legally obligated to pay tax nor did Minns say anything about cross examining the special agent to demonstrate his lack of understanding of the tax code or any such similar tactic. Minns focused solely on willfulness exactly as I have proposed to do in defending you. See also, Minns' comments on page 156 where he explains willfulness is the only legal issue for a defendant who failed to include his income on his tax return. He identified no other legal issue. Also, see Minns' comments in

footnote #118 where he explains, "The defense should concede obvious points against the cause and do battle where reasonable minds may differ; usually that means the issue of willfulness."   Minns and I are in total agreement.

(*Id.*)

Counsel further emphasized to Movant that counsel's recommended trial strategy was aligned with the approach employed by Minns.  (*Id.* at 4)  Counsel noted that Minns had explained, "Closing argument centered on the one point.  I emphasized that the only contested issue was what [the defendant] believed..."  (*Id.*)  Counsel declared that the approach "is exactly what I proposed for you.  Minns won the trial not by contesting every little point or by aggressively cross examining the Government's witnesses, but rather he won by isolating the one point that mattered; the mental state of [the defendant]."  (*Id.*)  Counsel reiterated that he concurred with Minns' tactic of agreeing with hostile witnesses on certain points rather than cross-examining them on losing issues.  (*Id.*)  Counsel further emphatically agreed with Minns' cross-examination strategy, described by Minns as follows:

> It is a common pl[o]y in criminal tax cases for the defense lawyer to be rude, to contest every witness who takes the stand, and to argue over every detail in the indictment.  The strategy is generally doomed to failure.  It effectively focuses the trial on the strength of the government's case.  The defense should focus on the strength of the *defendant's* case.

(*Id.* (emphasis in original))   Counsel was clear in the letter that he believed Minns' approach must be applied in defense of Movant's case.  (*Id.*)

### E.   Movant's declarations in support of his Amended Motion

Movant filed two declarations in this action, the first dated September 19, 2018 (Doc. 11-2), and a second, supplemental declaration dated December 26, 2018 (Doc. 11-8).  In his initial declaration, Movant asserts that he did not fire counsel after Movant's November 15, 2015, letter expressing deep concern over counsel's proposed trial strategy because counsel had immediately responded that he would pursue other strategies so long as the strategies did not subject counsel to sanctions.  (Doc. 11-2 at 2)

In his first declaration, Movant also states that he had prepared motions to the Court with the assistance of a legal researcher that his trial counsel refused to file when Movant and trial counsel discussed the issue about a week before March 22, 2016.  (*Id.* at 2-3)  Movant said he "felt abandoned by [trial counsel] after he refused to file the motions and suggested that he might withdraw as [Movant's] counsel."  (*Id.* at 3)  Movant reports that he expressed his frustrations about trial counsel in a conversation with a Nevada attorney and that Movant received advice from the out-of-state attorney that Movant should replace his trial counsel with "newly-licensed attorneys" who would have the "various rules of procedure and evidence fresh in their minds from law school and the bar exam."  (*Id.* at 3)  Movant avers that he told the out-of-state attorney that he "would keep this option on the table."  (*Id.*)

Movant declares that early on in his cases, counsel and counsel's staff advised Movant there would be a number of pretrial conferences that he would not need to attend if the conferences "involved procedural matters and were not substantive."  (*Id.* at 2)  Despite that Movant, in his own words, was frustrated with trial counsel and thinking about replacing him (*Id.* at 3), Movant declares he did not attend the March 22, 2016, status conference because counsel's staff told him he did not need to attend, and he had interpreted this to indicate that the conference would be non-substantive.  (*Id.*)  Movant further asserts that counsel advised him after the status conference that District Judge Campbell had proposed "a solution that allowed [counsel] to stay on the case while filing the motions that [Movant] wanted presented.  (*Id.* at 4)  This solution involved [counsel] filing the motions on [Movant's] behalf, but the Court treating them as *pro per* filings."  (*Id.*)  Movant states he was not happy with the Court's proposed solution and that counsel did not "tell [Movant] anything else about what was said or that transpired during the March 22, 2016, conference."  (*Id.*)

Movant submits that he subsequently met with counsel and that counsel told him "there were things that he wanted to stipulate to in the case."  (*Id.*)  Movant says he told counsel they had to object to lay witnesses stating legal conclusions and that counsel said

he would object in that situation.  (*Id.*)  Movant avers that counsel failed to "explain to [Movant] what a stipulation meant other than that we could rebut or object to stipulations." (*Id.* at 4-5)  With respect to the admission of exhibits, for instance, [Movant] thought a stipulation was merely an agreement to the *admissibility* of the exhibit itself—not that the content of the exhibit *was actually true*." (*Id.* at 5 (emphasis in original))  Movant describes circumstances under which he was led to believe that it was possible to object to or rebut stipulations.  (*Id.* at 5)

Movant further asserts that on the first day of trial, the prosecution introduced numerous exhibits on stipulated agreement, that included a handwritten note indicating that Movant had failed to file 1040 tax forms and otherwise "claimed a tax deficiency existed." (*Id.* at 5-6)  Movant avers that he did not

> object to the stipulated admission of these exhibits at trial because [counsel] never explained to [Movant] that it was [Movant's] *personal* responsibility to object to the admission of evidence that he stipulated to or [Movant] would waive [his] Confrontation Clause rights.  If [counsel] had explained to [Movant] that it was [Movant's] responsibility to object to the admission of these exhibits in order to preserve [Movant's] Confrontation Clause rights, [Movant] would have done so.

(*Id.* at 6)

Movant also attests he "consistently told [trial counsel] that [he] was completely innocent of all elements of the Government's case and expected [his] defense to be consistent therewith." (*Id.*)  Movant points out that he rejected a misdemeanor plea offer from the Government because it would have required him to plead guilty and that he believed then and believes now that he is innocent. (*Id.*)  Movant asserts that trial counsel conceded in opening statement that a tax deficiency existed, and Movant claims that if he had been aware that counsel "planned to stipulate to the Government's version of the facts, and that [Movant] could not rebut or object to those stipulations once entered, [Movant] would have fired [counsel] and hired another lawyer." (*Id.* at 7)

In his second, supplemental declaration, Movant declares that in contrast to "whatever caricature [trial counsel] may give to his November 25, 2015, letter," it was not

clear to Movant and Movant did not agree that counsel would only put on a *Cheek* defense, or that counsel "would not vigorously cross-examine every Government witness because doing so would be counterproductive." (Doc. 11-8 at 2)  Movant avers that his counsel "made numerous statements" to him in December 2015 and afterwards that "suggested-both directly and impliedly – that [counsel] would not limit [the] defense to *Cheek* and would vigorously examine every Government witness." (*Id.* at 2-3)  Despite that Movant provided two declarations and was allowed to file an Amended Motion, Movant did not describe any direct or indirect statements he claims his trial counsel made that suggested in December 2015 and afterwards that the defense would not be limited to *Cheek*. (*Id.*)

Movant ends his second, supplemental declaration by stating that he "repeatedly made complaints to [his trial counsel] about [his trial counsel's] proposed handling of [Movant's] defense on numerous instances before and after [trial counsel's] November 25, 2015 letter." (*Id.* at 3)

### F.    Movant's *pro per* filings

At the March 22, 2016, pretrial conference, Movant's trial counsel and the Court had the following exchange:

> [MOVANT'S TRIAL COUNSEL]:   Judge, I feel like I should raise a different issue that just came up.  My client's been asking me to file a motion to dismiss the case based on lack of jurisdiction.
>
> I'm intending to meet with my client.  At the moment my thought process is that it's not likely something I'm going to file.  He may insist that I file it.  And so that puts me at odds with my client.
>
> I'm of the opinion that I have various restraints on my ability to file things.  There may come a time where I move to withdraw as counsel and remain on as advisory counsel and let Mr. Christensen -- or Dr. Christensen file whatever he thinks is appropriate and then the Court can rule on that.  To me, that's the best way to resolve this particular issue.  I'm not really sure of another way to resolve it other than I just tell Dr. Christensen I don't intend to file it.  He could get upset with me and insist on trying the entire case by himself, which is not something I think is in anybody's interest.

So if that issue arises, and I'm going to meet with Dr. Christensen on Thursday of this week to discuss this very issue, among other issues. It may come down to where we get to an impasse. If that's the case, I may be moving to withdraw as counsel. But then maybe after that issue is resolved I may be re-moving to be counsel again on the case. I don't know another way to resolve it.

THE COURT:  Let me suggest another way. I'm assuming this lack of jurisdiction argument would be somewhat akin to his position on the taxes: I don't have jurisdiction over him for the same reason he wasn't subject to taxes. And I've seen arguments like that in other tax cases.

I'll tell you my preference -- I don't think it's inappropriate for me to state my preference -- is not to have you withdraw and have him represent himself, which will be a disaster for him in all probability, but I'm not opposed to your -- well, to him filing a pro se motion even though you're representing him. So that you can say to him, in effect, I can't in good faith file this motion because I don't believe it's well taken, but if you feel strongly that you want to have it heard, you can write it, you can give it to me, I'll file it with a notice that this is your motion, we'll get the government's response and the judge will rule on it, but then you stay on as his counsel in the case.

That avoids the impasse where you have to withdraw over a motion, but at least gives him the opportunity to have his motion heard.

That's happened in other cases that I've handled and I thought that was a better way to do it rather than have it become such an issue between counsel and client that there has to be withdrawal by the defense attorney.

[MOVANT'S TRIAL COUNSEL]:  That's a good suggestion, Judge, and it's one that I'll present. I think it avoids the problem. If there's oral argument granted on that, I would anticipate that that would be Dr. Christensen's argument.

THE COURT:  Right. And unless the government objects, I would be happy to have him argue it so that he gets a hearing on his argument and I rule, but we don't lose defense counsel in the process.

[MOVANT'S TRIAL COUNSEL]:  I'm glad I raised it, Judge. I'll deal with it like that.

[RESPONDENT'S TRIAL COUNSEL]:  And that is fine with the government, Your Honor. We want to keep Mr. Victor on.

- 12 -

(CR Doc. 65 at 24-26 (RT 3/22/16))

On March 31, 2016, defense counsel filed a Notice of *Pro Per* Filing by [Movant] notifying the Court that counsel would be filing a *Pro Per* Motion to Dismiss for Want of Jurisdiction on behalf of Movant and that the motion "should be treated as if it was filed *Pro Per* by [Movant]."  (CR Doc. 54)  The motion to dismiss signed by Movant was filed on the same day; the motion began by notifying the Court Movant was "appearing on his own behalf" regarding the motion.  (CR Doc. 55)  After Respondent filed its response, defense counsel again filed a notice with the Court that he would be filing Movant's *pro per* reply on behalf of Movant.  (CR Doc. 62)  The reply was also signed by Movant.  (CR Doc. 63)  District Judge Campbell denied Movant's motion and found his arguments were without merit.  (CR Doc. 72)

On May 4, 2016, defense counsel again filed a notice that Movant would be filing a *pro per* motion to vacate the Judge Campbell's order denying his motion to dismiss for lack of jurisdiction.  (CR Doc. 76)  The motion to vacate was signed by Movant and began with stating that he was appearing "on [his] own behalf."  (CR Doc. 78)  Judge Campbell denied the motion without additional briefing and without a hearing, holding that Movant's arguments against jurisdiction were legally frivolous.  (CR Doc. 81)

On May 18, 2016, during trial, defense counsel filed a notice advising the Court that Movant would be filing a *pro per* request for jury instructions (CR Doc. 91), which was filed on the same day (CR Doc. 92).  Judge Campbell denied the *pro per* filing on the record.  (CR Doc. 93, CR Doc. 120 at 232-233)  Explaining his ruling, Judge Campbell advised Movant that parties must act through counsel.  (*Id.* at 232)  Judge Campbell explained that the earlier exception had been made so that Movant could file a *pro per* pretrial motion, but that the exception didn't "otherwise apply in the case."  (*Id.* at 232-233)  Judge Campbell also found the proposed jury instructions were incorrect statements of the law and were untimely.  (*Id.* at 233)

. . .

. . .

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**G.     Movant's trial**

In opposition to the Amended Motion, Respondent describes the trial and recounts trial events.  (Doc. 14 at 4-6)  Movant does not offer contrary record citations and Movant does not contest any of Respondent's descriptions (Doc. 17), all of which undersigned finds supported by the trial record.  Respondent writes:

> Before, during, and after the six-day trial in May 2016, [Movant] vigorously participated in his own defense.  He drafted and filed his own motion to dismiss the Indictment and proposed jury instructions.  CR 55; CR 92.  He attended sidebars.  RT 5/12/16 at 220:1-5.  [Movant's trial counsel] let it be known when he and [Movant] disagreed about trial strategy.  RT 3/22/16 at 24:2-25:1; RT 4/27/16 at 45:14-20.
>
> [Movant] also testified for more than 12 hours, on three trial days.  See RT 5/17/16 at 605:13-732:18; RT 5/18/16 at 768:7- 981:10; RT 5/19/16 at 1003:7-1113:8.  . . .  He spent many hours explaining his theory that the tax code did not apply to him, or to any other United States citizen who was "domiciled" in the United States; rather, the tax code applied only to United States citizens living abroad and foreigners living in the United States.  E.g., RT 5/17/16 at 624:21-631:25; RT 5/19/16 at 1039:24-1044:12.  He talked about the research he did to form and support his theory and the advice he sought.  E.g., RT 5/17/16 at 692:4-719:18.  He played nearly two hours of video clips from tax protester videos that he claimed supported his theory and explained to the jury what he thought was significant about the clips.  RT 5/17/16 at 720:16-732:18; RT 5/18/16 at 768:7- 780:9.  He also showed the jury a number of books and videos he reviewed in researching his theory.  RT 5/18/16 at 780:10-802:10.
>
> During his direct testimony, [Movant] also presented a 64-page PowerPoint presentation.  [Movant] prepared the presentation himself and it was filled with citations to cases, statutes, and federal regulations that he claimed supported his theory regarding the tax code.  RT 5/18/16 at 804:22-883:22.  A 30-page subset of his PowerPoint presentation was admitted into evidence for the jury to review during their deliberations.  RT 5/18/16 883:20-885:17.
>
> After [Movant] testified, [Movant's trial counsel] gave his closing argument, which lasted nearly two hours.  See RT 5/19/16 at 1162:17-1226:9.  During his closing, [Movant's trial counsel] went through the government's evidence and explained why he thought it did not show [Movant's] tax violations were willful.  RT 5/19/16 at 1170:1-1187:23.  [Movant's trial counsel] also went through the evidence [Movant] presented, including

> [Movant's] own testimony and that of his expert, and argued it confirmed [Movant's] conduct wasn't willful.  E.g., RT 5/19/16 at 1187:23-1213:14. [Movant's trial counsel] finished by telling the jury "to return the only verdict in this case that is consistent with the evidence that was presented, consistent with the burden of proof beyond a reasonable doubt, and consistent with what your oaths as jurors is.  Do the right thing.  We ask that you return verdicts of not guilty on each of the counts."  RT 5/19/16 at 1226:4-9.
>
> After several hours of deliberations, the jury returned a verdict of guilty on the seven tax evasion counts and two counts of failure to file tax returns; the jury found [Movant] not guilty on the five counts for filing false tax returns. CR 101.

(Doc. 14 at 4-6)

Regarding the testifying agent for the Respondent at trial, Judge Campbell correctly noted that at trial defense counsel "object[ed] to Agent Klepper presenting a legal opinion on the tax deficiency" despite "agree[ing] that Agent Klepper could testify about his calculations.  *See* Doc. 105 at 45 ("*I don't object to him doing the math*, Judge, I object to him rendering the legal conclusion that there is a deficiency that's owed.") (emphasis added); *id.* at 48 ("*Judge, I don't have an objection to the math. . . .  So if he wants to do math and stop short of saying . . .  I have determined that Dr. Christensen owes a deficiency, then I don't have an objection.*") (emphasis added)."  (CR Doc. 127 at 7)

Also regarding Agent Klepper's trial testimony, Judge Campbell accurately recounted that "Agent Klepper did not use or refer to [non-testifying] Agent Corbin's analysis during [Agent Klepper's trial] testimony."  (CR Doc. 127 at 8)  Judge Campbell concluded that an "assertion that 'Mr. Klepper testified to Mr. Corbin's testimonial statements' (Doc. 124 at 5-6) is simply incorrect."  (CR Doc. 127 at 8, fn. 4)

## IV.   STANDARDS OF REVIEW

### A.   Section 2255 motion to vacate, set aside, or correct sentence

A federal prisoner is entitled to relief from his sentence if it was "imposed in violation of the United States Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the

1    maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. §

2    2255(a).

3         **B.    Ineffective assistance of counsel**

4         To obtain relief for a claim of ineffective assistance of counsel ("IAC"), a movant

5    must show both that counsel's representation fell below an objective standard of

6    reasonableness and also that counsel's deficient performance prejudiced the defense.

7    *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984).  In reviewing counsel's

8    performance, courts "indulge in a strong presumption that counsel's conduct falls within

9    the wide range of reasonable professional assistance."  *Id.* at 690.  "A fair assessment of

10   attorney performance requires that every effort be made to eliminate the distorting effects

11   of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

12   evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  The standard for

13   judging counsel's representation is "highly deferential."  *Id.*  It is "all too tempting" to

14   "second guess counsel's assistance after conviction or adverse sentence."  *Id.*  "The

15   question is whether an attorney's representation amounted to incompetence under

16   'prevailing professional norms,' not whether it deviated from best practices or most

17   common custom."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland,*

18   466 U.S. at 690).

19        To establish prejudice, a movant must show a "reasonable probability that, but for

20   counsel's unprofessional errors, the result of the proceeding would have been different."

21   *Strickland*, 466 U.S. at 694.  A "reasonable probability" is one "sufficient to undermine

22   confidence in the outcome."  *Id.*  The court need not reach both components of *Strickland*,

23   466 U.S. at 697 ("Although we have discussed the performance component of an

24   ineffectiveness claim prior to the prejudice component, there is no reason for a court

25   deciding an ineffective assistance claim to approach the inquiry in the same order or even

26   to address both components of the inquiry if the defendant makes an insufficient showing

27   on one.").

28

### C.      Standard for warranting evidentiary hearing

Under 28 U.S.C. § 2255, a court shall grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief ...."  28 U.S.C. § 2255(b).  To state a claim for ineffective assistance of counsel such that a movant would be entitled to an evidentiary hearing, a movant must allege facts showing that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland*, 466 at 686.

To show that he is entitled to an evidentiary hearing, a movant must allege "specific factual allegations that, if true, state a claim on which relief could be granted."  *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (internal quotations and citations omitted).  An evidentiary hearing may only be denied if the claim is "'so palpably incredible or patently frivolous as to warrant summary dismissal.'"  *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004) (quoting *Leonti*, 326 F.3d at 1116).  In determining whether to grant an evidentiary hearing, a court must consider whether, accepting the truth of a movant's factual assertions that are not directly and conclusively refuted by the record, the movant could prevail on his claims.  *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994); *Turner v. Calderon*, 281 F.3d 851 (9th Cir. 2002).

### V.      DISCUSSION

### A.      Ground One:      IAC – whether counsel hid his intended trial strategy, thereby impairing Movant's ability to decide whether to fire him

In Ground One, Movant asserts his trial counsel's performance was deficient because he kept his intended trial strategy a secret from Movant.  (Doc. 11 at 4; Doc. 11-1 at 12-15)  Movant further claims he was prejudiced because he would have fired his trial counsel "on the spot" if before trial Movant had known counsel's trial strategy.  (Doc. 11-1 at 15)  Undersigned concludes that Movant's claims are contrary to the record, including his own declarations.  Further, the assertions do not state a claim under the applicable law.

In his first declaration, Movant states that about a week before March 22, 2016, Movant "felt abandoned by [trial counsel] after he refused to file the motions [Movant had prepared] and suggested that he might withdraw as [Movant's] counsel." (Doc. 11-2 at 3) Movant reports that he expressed his frustrations about trial counsel in a conversation with a Nevada attorney and that Movant received advice from the out-of-state attorney that Movant should replace his trial counsel with "newly-licensed attorneys" who would have the "various rules of procedure and evidence fresh in their minds from law school and the bar exam." (*Id.*) Movant avers that he told the out of state attorney that he "would keep this option on the table." (*Id.*) Movant's first declaration describes Movant's frustration with trial counsel two months before trial and Movant's thoughts at that time about possibly replacing his trial counsel. Movant ends his second, supplemental, declaration by stating that Movant "repeatedly made complaints to [trial counsel] about his proposed handling of [Movant's] defense on numerous instances before and after [trial counsel's] November 25, 2015 letter." (Doc. 11-8 at 3)

Movant's declarations belie the premise of Movant's Ground One that he would have fired his trial counsel "on the spot" (Doc. 11-1 at 15) if before trial Movant had known counsel's trial strategy. (Doc. 11 at 4; Doc. 11-1 at 12-15) The record is clear that more than six months before trial, Movant's trial counsel spelled out his intended trial strategy in detail in his November 25, 2015, letter to Movant. As counsel explained to Movant, the trial strategy was the same strategy advocated by the Minns article Movant had provided to trial counsel before the November 25, 2015, letter. Trial counsel announced this same strategy in his opening statement at trial, yet Movant did not complain about the strategy during or after trial until September 2018, when he filed the Motion initiating this action.

Also noteworthy is that Movant's trial counsel was forthright with the Court when he and Movant disagreed about case strategy. The motion Movant drafted at issue in Ground Three is a good example. *See* CR Doc. 65 at 24 ("My client's been asking me to file a motion to dismiss the case based on lack of jurisdiction. … At the moment my

1    thought process is that it's not likely something I'm going to file.  He may insist I that I file

2    it.  And so that puts me at odds with my client.").

3         Movant asserts that after counsel's November 25, 2015, letter it was not clear to him

4    that counsel would argue only a *Cheek* defense, or that counsel "would not vigorously cross-

5    examine every Government witness because doing so would be counterproductive."  (Doc.

6    11-8 at 2)  These and Movant's other assertions regarding his purported surprise about trial

7    strategy not only strain credulity but also are insufficient to warrant habeas relief or even an

8    evidentiary hearing.  *See* Section IV(C), *supra*; c*f. Nilsson v. City of Mesa*, 503 F.3d 947,

9    952 n.2 (9th Cir. 2007) ("a conclusory, self-serving affidavit, lacking detailed facts and any

10   supporting evidence, is insufficient to create a genuine issue of material fact" to defeat a

11   summary judgment motion) (citation omitted).

12        Importantly, trial counsel's November 25, 2015, letter was composed after counsel

13   had fully studied the article written by Michael Minns.  Despite counsel's earlier reassurance

14   that if Movant desired to "pursue a different strategy that's fine," (Doc. 11-4 at 2), the

15   November 25, 2015, letter was explicit that this was no longer the case.  Specifically,

16   Counsel advised Movant that:  (1) raising a legal argument that Movant was not legally

17   required to pay tax would fail; (2) although Movant's *Cheek* defense had "some problems,"

18   it should be the focus of his defense; (3) every cross-examination question must relate to

19   the issue of willfulness; (4) he intended to forgo defensive arguments regarding Movant's

20   claim that he was not legally obligated to pay tax or to cross-examine the special agent to

21   establish the agent did not understand the tax code; (5) he agreed with Minns' strategy to

22   concede "obvious points against the cause" and focus instead on the issue of willfulness;

23   and (6) he did not intend to contest every point or to aggressively cross-examine

24   Government witnesses, and intended to agree with hostile witnesses in order to "isolate the

25   one point" that mattered, that is, Movant's mental state and what he believed.  (Doc. 11-9

26   at 2-4)

27        Movant argues that defense counsel stated during the March 22, 2016, status

28   conference that there was "really not that much that I dispute in the government's case" and

that he could "almost stipulate to their entire case." (Doc. 11-1 at 14, citing CR Doc. 65 at 35) He argues he had "no idea that [trial counsel] did not really dispute the Government's case" or that counsel wanted to "stipulate to almost everything." (*Id.*) He further alleges that counsel "took advantage" of Movant's absence from the status conference "to tell the Court what he would not tell [Movant] face to face—that [counsel] had no intention of doing 'anything to defend [Movant] that does not cause [counsel] to be sanctioned.'" (*Id.* at 15) Had Movant known this, he says, he would have "fired [counsel] on the spot."

As discussed above, however, counsel had already advised Movant in the November 25, 2015, letter that his trial strategy would focus on the defense of Movant's sincere beliefs. Nothing that defense counsel said at the status conference was inconsistent with this position. The parties were advising the Court on scheduling and estimated trial length. After advising the Court that a settlement was unlikely, Movant's trial counsel opined as follows:

> There's really not much that I dispute in the government's case. And unless [Movant] -- he's going to have some heartburn over that, I don't think he is, then I could almost stipulate to their entire case.
>
> This – Judge, we don't disagree that he didn't send his taxes in, so I don't want to make that an issue. He did that stuff. So sometimes prosecutors say to me, "Well, I don't want to stipulate my whole case away." But if they don't so say that, I could stipulate to almost everything here and this case is going to turn on, really, [Movant] on the stand and whether the jury believes he's sincere. And so that's the bulk of our case, and I don't frankly think that's going to be very long either.

(CR Doc. 65 at 35)

Further, in February 2016, trial counsel responded to the Government's motion in limine and argued that evidence related to Movant's state of mind and the sincerity of his beliefs about the federal tax laws at issue should be admissible. (CR Doc. 44 at 1-8) Also in February 2016, Movant's counsel filed a Notice of Possible Expert Testimony indicating that Movant's trial defense would be based on the issue of willfulness, including notice of a psychologist's testimony on Movant's actions as consistent with someone who, while

"otherwise completely rational and intelligent" "has developed and steadfastly latched onto a sincere belief in a theory popularly regarded as a conspiracy." (CR Doc. 43)  In March 2016, Movant's counsel filed a motion in limine seeking admission of materials relating to Movant's interpretation of tax laws.  (CR Doc. 49)

On April 6, 2016, Movant filed a Motion in Limine to Admit Evidence Relating to Plea Negotiations, Privileged Information, and *Pro Per* Motions.  (CR Doc. 61)  Movant advised the Court that a plea agreement was "on the verge of being finalized" which would have required Movant to plead to only three misdemeanor charges and did not require incarceration.  (*Id.* at 2)  Although the motion stated that defense counsel strongly urged Movant to accept that "his beliefs were incorrect so he would be in a disposition to take the plea," Movant "opted to reject the guaranteed misdemeanor deal and defend himself at trial against the felonies."  (*Id.* at 3)  The motion asserted that because Movant maintained his belief that federal income tax was not applicable to him under the laws, he could not "truthfully enter into a plea agreement suggesting otherwise." (*Id.*)  The motion also argued that Movant's rejection of a favorable plea was extremely probative of his mental state.  (*Id.* at 3-4)  The motion further advised the Court that Movant had maintained his beliefs on the inapplicability of income tax liability to him despite his counsel's repeated warnings that "the jury will be instructed by the Court that [Movant's] beliefs concerning the inapplicability of the federal income tax are incorrect." (*Id.* at 4)  The motion also explained that Movant insisted on filing, against his counsel's advice, a *pro per* Motion to Dismiss Indictment for Want of Jurisdiction and argued this was also highly probative evidence of the sincerity of Movant's beliefs.  (*Id.* at 5)  Movant attached to the motion in limine his waiver of attorney/client privilege (CR Doc. 61-1), a copy of the draft plea agreement (CR Doc. 61-2), a copy of defense counsel's November 25, 2015, letter to Movant (CR Doc. 61-3), and a copy of Movant's motion to dismiss his indictment for lack of jurisdiction (CR Doc. 61-4).

In Movant's counsel's opening statement at trial, he advised the jury that the parties had stipulated to much of the prosecution's case.  (CR Doc. 157 at 164-165)  He told the

jury that Movant had filed tax returns for many years, stopped filing income tax returns for a period of time, and then started filing returns again.  (*Id.* at 165)  Counsel emphasized that what the jury would be asked to decide in the case was whether the government could prove beyond a reasonable doubt that Movant did not make a good faith mistake of law.  (*Id.* at 166)  He reiterated that the jury would not be asked to decide what the tax law is, but only the "central issue" in the case:  "Did [Movant] honestly believe that he was not liable to pay the income tax?"  (*Id.* at 168-170)  At no point in the trial does the record reflect that Movant protested his counsel's trial strategy.

During trial, counsel's direct examination (CR Doc. 117 at 116-131, CR Doc. 109 at 1-137 (RT 5/17/16), CR Doc. 114 at 9-169 (RT 5/18/16)), and redirect examination of Movant (CR Doc. 115 at 50-119 (RT 5/19/16)) was focused overwhelmingly on the bases for Movant's belief that a person in his particular situation was not liable for federal income taxes.  Movant testified that he filed individual tax returns until 1996, and thereafter paid tax returns associated with business entities.  (CR Doc. 109 at 15-16 (RT 5/17/16))  Movant's trial counsel asked Movant why he did not file returns or pay income tax for the years identified in the indictment.  (*Id.* at 59-60)  Movant replied that it was his belief that he was not liable for the tax.  (*Id.*)

On cross-examination by the prosecution, Movant agreed that during the years from 1997 going forward, he paid no income taxes on the money he earned as a doctor.  (CR Doc. 114 at 170-171)  As part of his direct examination by counsel, Movant was questioned on a PowerPoint presentation Movant created.  (*Id.* at 47-127)  Movant stated that the presentation was "[n]ot designed to try to create law or persuade anybody as to the correctness of law, but my beliefs about the law."  (*Id.* at 48)  During Movant's direct examination by defense counsel, District Judge Campbell instructed the jury that evidence "including videos, statutes, revenue rulings, and cases that [Movant] will testify relied upon in forming his views" would be "relevant only to [Movant's] state of mind whether he acted willfully as alleged by the government."  (Doc. 109 at 5)

The evidence discussed above cumulatively indicates that Movant was well aware, both at the time of pretrial motion practice and during the trial, that his defense would be premised on his mental state indicating a sincere belief that federal income taxes did not apply in his particular circumstances.  Movant's long and detailed trial testimony was consistent with this defense.  Not to be overlooked is that the trial strategy was successful as to the five counts of filing false tax returns.

In his Reply, Movant contends that Respondent's arguments "ignore the critical issue of time" and points out that counsel had "repudiated any suggestion that [counsel] would limit [Movant's] defense to willfulness."  (Doc. 17 at 3)  This argument fails, however, because it plainly overlooks counsel's subsequent November 25, 2015, letter, and the record discussed above.  Movant also contends, without citing any authority, that by the time trial had commenced, "it was too late for [Movant] to do anything about [counsel's] asserted 'about face' in defense strategy."  (*Id.* at 5)  However, a motion to substitute counsel may be granted even when made on the first day of trial after "'the court [has made] a balancing determination, carefully weighing the resulting inconvenience and delay against the defendant's important constitutional right to counsel of his choice.'"  *United States v. Adelzo-Gonzalez*, 268 F.3d 772, 780 (9th Cir. 2001) (quoting *United States v. D'Amore*, 56 F.3d 1202, 1206 (9th Cir. 1995), *overruled on other grounds by United States v. Garrett,* 179 F.3d 1143, 1145 (9th Cir. 1999) (en banc)).  Movant did not make any such motion or otherwise indicate dissatisfaction with counsel's representation.

Movant cites *United States v. Brown*, 785 F.3d 1337, 1343-44 (9th Cir. 2015), for the rule that a defendant has a right to fire retained, as opposed to appointed, counsel for any reason or no reason, subject to considerations of "the fair, efficient and orderly administration of justice."  (Doc. 11-1 at 12-14)  Although Movant relies on *Faretta v. California* for support (*Id.* at 13), that decision holds that when a defendant wishes to represent himself *pro per*, his relinquishment of the right to counsel must be done "knowingly and intelligently."  *Faretta v. California*, 422 U.S. 806, 835-36 (1975).  Movant also cites *Michigan v. Harvey* for the rule that it is the government's burden to establish that

a defendant's waiver of the Sixth Amendment right to counsel must be knowing and voluntary.  (Doc. 11-1 at 13, citing *Michigan v. Harvey*, 494 U.S. 344, 354 (1990))  These cases do not support Movant's statement that "the right to fire retained counsel must be knowing and voluntary" and do not address the question of ineffectiveness of counsel who has allegedly misled his client about trial strategy.

Movant has failed to show that defense counsel's representation fell below an objective standard of reasonableness, *Strickland*, 466 U.S. at 688, or that he was denied his right to representation by his counsel of choice.  Additionally, Movant has not established that his counsel's allegedly deficient performance prejudiced his defense.  *Strickland*, 466 U.S. at 691-96.  He does not demonstrate how substituting another attorney would have changed the result of his trial.  Movant argues that he does not need to show prejudice because his claim deals "with a component of the right to counsel of choice—even if tied to a claim of ineffectiveness[.]"  (Doc. 17 at 5)  Yet, Movant has not established he was denied the right to counsel of his choice.  As explained above, the record is clear that during trial Movant did not indicate he was unhappy with his choice of counsel even after his counsel's clear and specific discussion of trial strategy during opening statement.

For the above reasons, undersigned recommends the Court find that Movant has failed to establish his Ground One claim of ineffective assistance of counsel.  For the reasons above, undersigned additionally recommends that the Court deny Ground One without an evidentiary hearing because Movant has failed to make the required showing for an evidentiary hearing.  *See* Section IV(C), *supra*.  Not only has Movant failed to state a claim of deficient performance under *Strickland*'s first prong as discussed above, Movant has not stated a claim that his counsel's allegedly deficient performance prejudiced Movant's defense, *Strickland*, 466 U.S. at 691-96.  Significantly, Movant does not even explain how or why substituting another attorney for his trial counsel would have changed the result of his trial.  Movant has not alleged facts that support a prejudice prong, and undersigned finds on this record that there is no evidence supporting a prejudice argument on this record, particularly given the breadth and length of Movant's own trial testimony.

**B.     Ground Two:  IAC – Movant's right to maintain his innocence**

Movant asserts his Sixth Amendment right to maintain his innocence was violated when defense counsel conceded in opening statement that Movant did not pay his income taxes for a certain period.  (Doc. 11 at 5, Doc. 11-1 at 19)  Movant wrongly equates the trial decision not to challenge certain other facts and elements of the charged crimes (such as failure to pay any taxes) with a full admission of guilt.

In support, Movant cites the recent United States Supreme Court decision in *McCoy v. Louisiana*, __ U.S. __, 138 S.Ct. 1500 (2018).  Yet, the *McCoy* decision is inapplicable here.  In *McCoy*, defense counsel conceded the defendant's guilt to the crime charged as part of a strategy to obtain a life in prison rather than a death sentence.  The Supreme Court held that concession of guilt as part of a sentencing mitigation strategy was within the purview of the defendant, not defense counsel:

> Counsel may reasonably assess a concession of guilt as best suited to avoiding the death penalty, as [defense counsel] did in this case.  But the client may not share that objective.  He may wish to avoid, above all else, the opprobrium that comes with admitting he killed family members.  Or he may hold life in prison not worth living and prefer to risk death for any hope, however small, of exoneration.  *See* Tr. of Oral Arg. 21–22 (it is for the defendant to make the value judgment whether "to take a minuscule chance of not being convicted and spending a life in ... prison"); Hashimoto, Resurrecting Autonomy: The Criminal Defendant's Right to Control the Case, 90 B.U.L. Rev. 1147, 1178 (2010) (for some defendants, "the possibility of an acquittal, even if remote, may be more valuable than the difference between a life and a death sentence"); cf. *Jae Lee v. United States*, 582 U.S. ——, ——, 137 S.Ct. 1958, 1969, 198 L.Ed.2d 476 (2017) (recognizing that a defendant might reject a plea and prefer "taking a chance at trial" despite "[a]lmost certai[n]" conviction (emphasis deleted)).  When a client expressly asserts that the objective of "his defence" is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt.  U.S. Const. Amdt. 6 (emphasis added); see ABA Model Rule of Professional Conduct 1.2(a) (2016) (a "lawyer shall abide by a client's decisions concerning the objectives of the representation").

138 S.Ct. at 1508-09.   The Supreme Court left in place counsel's ability to make trial strategy decisions without a client's consent, such as trial objections, trial witnesses, and arguments advanced:

> [p]reserving for the defendant the ability to decide whether to maintain his innocence should not displace counsel's, or the court's, respective trial management roles.   See *Gonzalez*, 553 U.S., at 249, 128 S. Ct. 1765 ("[n]umerous choices affecting conduct of the trial" do not require client consent, including "the objections to make, the witnesses to call, and the arguments to advance"); cf. post, at 1515 – 1516. Counsel, in any case, must still develop a trial strategy and discuss it with her client, see *Nixon*, 543 U.S., at 178, 125 S. Ct. 551, explaining why, in her view, conceding guilt would be the best option.   In this case, the court had determined that McCoy was competent to stand trial, i.e., that McCoy had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Godinez v. Moran*, 509 U.S. 389, 396, 113 S. Ct. 2680, 125 L.Ed.2d 321 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)).   If, after consultations with English concerning the conduct of the defense, McCoy disagreed with English's proposal to concede McCoy committed three murders, it was not open to English to override McCoy's objection.   English could not interfere with McCoy's telling the jury "I was not the murderer," although counsel could, if consistent with providing effective assistance, focus his own collaboration on urging that McCoy's mental state weighed against conviction.   See Tr. of Oral Arg. 21-23.

138 S.Ct. at 1509.   Significantly, in *McCoy*, the Supreme Court distinguished the circumstances in that case, where defense counsel conceded the defendant's guilt on the charged crime, from those in cases, such as Movant's, where the dispute is over "whether to concede an element of a charged offense[.]"  138 S.Ct. at 1510.

Despite Movant's misplaced reliance on *McCoy*, he recognizes that for *McCoy* to apply retroactively to his case he must show that *McCoy* is a "watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." (Doc. 2 at 18, quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990))   Although Movant suggests that the decision in *McCoy should* be deemed a watershed rule of criminal procedure, the Supreme Court has not recognized it as such.  *See Johnson v. Ryan*, No. CV-

18-00889-PHX-DWL, 2019 WL 1227179, at *2 (D. Ariz. Mar. 15, 2019) ("Nevertheless, *McCoy* didn't announce a watershed rule of criminal procedure, so it doesn't apply retroactively.").

To establish a violation of his Sixth Amendment right to counsel, Movant must demonstrate that his trial counsel's performance was deficient and that the deficiency prejudiced Movant. *Strickland*, 466 U.S. at 687. Movant has not established that defense counsel's opening statement concession that Movant had failed to pay income taxes was constitutionally deficient representation. The Ninth Circuit has recognized "that in some cases a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges. *See United States v. Bradford,* 528 F.2d 899, 900 (9ᵗʰ Cir. 1975), *cert. denied*, 425 U.S. 914 (1976)." *United States v. Swanson*, 943 F.2d 1070, 1075-76 (9ᵗʰ Cir. 1991). Defense counsel made it plain before trial that he expected to concede obvious facts and focus instead on the issue of willfulness. Because counsel forcefully argued willfulness, an element of all charges being tried against Movant,[6] he did not concede guilt on the charges but rather only on an element of the charges. The *Cheek* case requires the Government to prove that "the defendant was aware of the duty at issue, which cannot be true if the jury credits a good-faith misunderstanding and belief submission, whether or not the claimed belief or misunderstanding is objectively reasonable." *Cheek*, 498 U.S. at 202. As noted, on cross-examination, Movant himself agreed that during the years from 1997 going forward, he paid no income taxes on the money he earned as a doctor. (CR Doc. 114 at 170-171) Accordingly, the defense strategy of telling the jury that Movant did not pay income taxes for an interval of time, but also arguing that this nonpayment was not done willfully, was a reasonable strategy in light of the overwhelming evidence of Movant's nonpayment of income taxes.

Moreover, Movant has not established he suffered prejudice when defense counsel told the jury Movant had not paid income taxes during part of the relevant period. Given

---

[6] *See* 26 U.S.C. § 7201 (Counts One through Seven), 26 U.S.C. § 7206(1) (Counts Eight through Twelve, and 26 U.S.C. § 7203 (Counts Thirteen and Fourteen).

that the prosecution's evidence established that Movant had not paid taxes, and Movant himself conceded this fact, it is unsurprising that Movant does not argue that prejudice has been established, but instead argues that *McCoy* applies and obviates the need for a showing of prejudice.  (Doc. 17 at 6)  As is discussed above, however, *McCoy* addressed circumstances significantly different from Movant's Ground One, and *McCoy* has not been held to apply retroactively.

For the above reasons, undersigned recommends the Court find that Movant has failed to state a claim in his Ground Two claim of ineffective assistance of counsel and deny Ground Two without an evidentiary hearing.  *See* Section IV(C), *supra*.

### C.    Ground Three:  IAC regarding hybrid representation

Movant's Ground Three claim centers on District Judge Campbell's pretrial suggestion at the March 22, 2016, status hearing that Movant could file a *pro per* pretrial motion regarding jurisdiction while still otherwise being represented by defense counsel in pretrial proceedings and throughout trial.

At the March 22, 2016, status hearing, defense counsel advised Judge Campbell that Movant asked him to file a motion to dismiss based on lack of jurisdiction, and that counsel did not want to file the motion because he concluded the underlying premise was legally incorrect.  (CR Doc. 65 at 24)  Counsel indicated he may need to move to withdraw from the case in order to permit Movant to file the motion himself, and possibly subsequently move to again represent Movant after Movant had filed the motion.  (*Id.*)  Judge Campbell proposed an alternative approach in which Movant would be permitted to file the motion through continued representation otherwise by defense counsel.  (*Id.* at 25)  Under this proposed scenario, Movant could write the motion and counsel would file it with a notice that the motion was Movant's and that the Court would rule on it without the need for counsel to withdraw.  (*Id.*)  Counsel for Respondent concurred with this approach, and defense counsel said he would present it to Movant.  (*Id.* at 26)  Movant did not attend the status hearing and was not part of the discussion.

Movant assigns error in that that the Court did not conduct a hearing to obtain a waiver of counsel and argues his counsel was ineffective for not objecting and insisting on Movant's knowing and intelligent waiver of his right to counsel. (Doc. 11-1 at 20) Movant also contends his appellate counsel was ineffective for not raising this issue on appeal. (*Id.* at 21)

### 1. Movant's IAC claim – trial counsel

As authority for this claim, Movant cites *Kimmel v. United States*, 672 F.2d 720, 721 (9th Cir. 1982), a case involving hybrid representation. "Hybrid representation" has generally been identified with situations in which a defendant waives his right to counsel, and the court appoints advisory counsel or co-counsel to assist. *McKaskle v. Wiggins*, 465 U.S. 168 (1984); *Locks v. Sumner*, 703 F.2d 403 (9th Cir. 1983); *United States v. George*, 85 F.3d 1433 (9th Cir. 1996).

In *Kimmel*, a court-appointed attorney served in an advisory capacity at trial after the defendant elected to represent himself. 672 F.2d at 721. By the end of trial, despite that advisory counsel had assumed a larger role, the Ninth Circuit still held that "Kimmel did not receive the benefits of his constitutional right to legal representation at his trial." *Id.* The Ninth Circuit noted that a district court is authorized to permit, "if the accused desires, a hybrid form of representation in which the accused assumes some of the lawyer's functions as Kimmel did." *Id.* The court explained that when an accused "assumed functions that are at the core of the lawyer's traditional role," he "must knowingly and intelligently waive" his right to counsel. *Id.*

The facts in *Kimmel* are not comparable to those in Movant's case. In Movant's case, the record is plain that Judge Campbell only permitted Movant to file his motion to dismiss for want of jurisdiction and his subsequent motion to vacate the denial of the motion to dismiss as a narrowly limited mechanism to avoid a circumstance in which Movant's counsel would feel compelled to temporarily withdraw from the case due the frivolousness of the motion. (CR Doc. 65 at 25) As noted, Judge Campbell circumscribed Movant's permission solely to filing a *pro se* motion to dismiss and Movant's motion to

vacate the Court's order denying the *pro per* motion to dismiss.  Movant was only granted a narrow exception to his defense counsel's representation to file pretrial motion paperwork regarding the Court's jurisdiction.  The narrow scope of Judge Campbell's pretrial motion ruling was demonstrated during trial when Judge Campbell did not allow Movant to file *pro per* jury instructions because Movant was represented by counsel and, thus, was required to act through counsel.  (CR Doc. 93, CR Doc. 120 at 232-233 (RT 5/18/16))

Movant cannot establish he suffered prejudice in the trial court on this issue.  Movant contends that when the Court did not expressly obtain his waiver of counsel, and defense counsel did not object, he was deprived of the chance to be advised of the potential consequences of his mishandling "the core functions" his counsel would otherwise have discharged.  (Doc. 11-1 at 20-21)  This argument is flawed.  Filing a legally baseless motion is not a function at the core of a lawyer's traditional role.  Further, Movant was fully represented by his retained counsel at trial and was merely permitted to file a pretrial *pro se* motion to dismiss, which his counsel thought was frivolous and Judge Campbell found baseless under the law.  Movant cannot demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Movant states that he "did not like the arrangement" concerning the filing of the motions "that had been imposed on [him] without knowledge or assent."  (Doc. 11-2 at 4)  Movant argues that his *pro per* pretrial jurisdictional motion filings do "not demonstrate that [Movant] *knowingly and voluntarily* agreed to represent himself in connection with these motions."  (Doc. 17 at 7)  Yet, under the holding in *Kimmel*, a trial court is not required to explain risks of self-representation even at trial, but rather the knowing and voluntary "test concerns what the accused understood rather than what the court said or understood."  672 F.2d at 722.  Movant cannot argue that he did not understand that he was representing himself as to the motion papers he signed and that began with: "[Movant] appearing in his own behalf in this Honorable Federal District Court."  (CR Doc. 55 at 1, 4)  Noteworthy is that the Court did not impose any requirement on Movant to file anything

and Movant's representation by retained counsel was not interrupted. That Movant filed his pretrial jurisdictional motion to dismiss papers under a notice filed by his retained counsel demonstrated Movant's agreement with Judge Campbell's suggested resolution to the conflict between Movant and his counsel regarding Movant's desire to file the motion to dismiss.

### 2. *Movant's IAC claim – appellate counsel*

Movant also argues his appellate counsel Michael Minns provided ineffective assistance by not raising this issue on appeal. (Doc. 11-1 at 21) Movant contends that this Court's "voluntary waiver of counsel from [Movant] was reversible error[,]" and that if this issue had been raised on appeal, "there is a reasonable probability the Ninth Circuit would have vacated [Movant's] convictions and remanded for further proceedings." (*Id.*) For the reasons set forth above, undersigned rejects Movant's assessment of the probable reception of this issue by the Ninth Circuit. Moreover, on appeal, counsel is not subject to a constitutional duty to raise every nonfrivolous issue requested by a defendant. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997); *Miller v. Keeney*, 882 F.2d 1428, 1434 n.10 (9th Cir. 1989).

Movant concludes without any supporting argument that he suffered prejudice on appeal based on counsel's failure to argue this claim, because the Ninth Circuit reasonably could have vacated his convictions and remanded for further proceedings. (Doc. 11-1 at 21) However, the frailty of Movant's claim requires the conclusion that Movant suffered no prejudice from appellate counsel's failure to assert the claim on appeal. *See Miller*, 882 F.3d at 1434.

For the above reasons, undersigned recommends the Court deny Movant's Ground Three claims of ineffective assistance of counsel without an evidentiary hearing because Movant has failed to state a claim on which relief could be granted in Ground Three. *See* Section IV(C), *supra*.

. . .

. . .

1    **D.      Ground Four:  IAC involving stipulation to admit summary charts**

2        In Ground Four, Movant argues defense counsel was ineffective for failing to advise

3    Movant that Movant was required to object to the stipulated admission of exhibits to

4    preserve Movant's right to appeal a Confrontation Clause claim.  Movant's Ground Four

5    claim is premised on defense counsel's stipulation to the admission of trial exhibit numbers

6    78, 79, and 170.  (Doc. 11-1 at 21-24)  Movant describes exhibit numbers 78 and 170 as

7    being labeled "'Tax Due and Owing from [Movant] from 2004-2010'" and "purport[ing] to

8    summarize 'Schedule C – Unreported income from Forest Country Anesthesia.'"  (*Id.* at

9    21)  Movant further indicates that Exhibit 78 is annotated with a statement declaring "In tax

10    years 2009 and 2010, [Movant] failed to file his individual Forms 1040."  (*Id.* at 21-22)

11    Movant also states that "Exhibit 79, 'Income Tax Discrepancy Adjustments for 2001-2010,'

12    gave the Government a critical concession on the issue of [Movant's] income."  (*Id.* at 22)

13        In denying Movant's appeal, the Ninth Circuit instructed, "[w]hen a criminal

14    defendant's lawyer stipulates that an exhibit is admissible in open court in the presence of

15    the defendant, the stipulation is binding unless the defendant indicates his or her objection

16    at that time."  *Christensen*, 705 Fed.Appx. at 599 (citing *United States v. Ferreboeuf*, 632

17    F.2d 832, 836 (9th Cir. 1980)).  The Ninth Circuit further explained that "defense counsel

18    may waive an accused's constitutional rights as a part of trial strategy."  *Id.* (citing *United

19    States v. Gamba*, 541 F.3d 895, 900 (9th Cir. 2008)).  In *Gamba*, the Ninth Circuit cited

20    *Wilson v. Gray*, 345 F.2d 282, 286 (9th Cir. 1965), *cert. denied*, 382 U.S. 919 (1965) for its

21    holding that counsel may waive an accused's Sixth Amendment right to confrontation as a

22    matter of trial tactics or strategy.  541 F.3d at 900.  *See also United States v. Plitman*, 194

23    F.3d 59, 64 (2nd Cir. 1999) ("We therefore join the majority of circuit courts of appeals and

24    hold that defense counsel may waive a defendant's Sixth Amendment right to confrontation

25    where the decision is one of trial tactics or strategy that might be considered sound.").

26        Movant complains defense counsel did not explain that it was Movant's "*personal*

27    responsibility to object to the admission of evidence that he stipulated to or [Movant] would

28    waive [Movant's] Confrontation Clause rights."  (*Id.* at 22, Doc. 11-2 at 6 (emphasis in

1    original))  Movant further asserts there was a reasonable probability the Ninth Circuit would

2    have reversed on this issue absent his failure to object.  (Doc. 11-1 at 21-22)  In his

3    September 2018 declaration, Movant states that his defense counsel "did not explain to me

4    what a stipulation meant other than that we could rebut or object to stipulations.  With

5    respect to the admission of exhibits, for instance, I thought a stipulation was merely an

6    agreement to the *admissibility* of the exhibit itself—not that the content of the exhibit *was*

7    *actually true*."  (Doc. 11-2 at 4-5, ¶ 17 (emphasis in original))

8         However, the explanation Movant avers his defense counsel provided him about the

9    effect of stipulating to the admission of exhibits was correct, that is, that the stipulation

10   between the parties addressed only the admissibility of exhibits and not whether the content

11   of the exhibits was factually accurate.  Movant's Ground Four fails to state a claim for

12   ineffective assistance of counsel because his counsel did not misadvise him regarding the

13   stipulation for admission of the exhibits.

14        At trial on May 11, 2016, the prosecution advised the Court that "the parties have

15   agreed and stipulated to the admissibility" of a large number of exhibits including Exhibits

16   78, 79, and 170.  (CR Doc. 103 at 14 (RT 5/11/16))  After verifying that Movant's counsel

17   did not object, the exhibits were admitted.  (*Id.* at 14-15)  Movant's counsel did not stipulate

18   to the truth of the exhibits, but only to their admissibility.  As Respondent observes (Doc.

19   14 at 19), further evidence that the stipulation had not been to the content of the summary

20   charts is that the prosecution called Agent Klepper to testify about the contents of the charts,

21   in particular his own calculations of Movant's alleged tax deficiency.  (CR Doc. 105 at 102-

22   116, CR Doc. 106 at 3-67)

23        Further, the record must be read that Movant's silence during trial about the

24   stipulation for admission was an assent to the stipulation, rather than a lack of

25   understanding.  A week after the stipulated admission of the exhibits, Movant attempted to

26   file jury instructions that he, rather than defense counsel, had drafted.  (CR Docs. 91, 92)

27   Movant's *pro per* pretrial jurisdictional filings and his attempt to file jury instructions *pro*

28   *per* demonstrate that in real time, as the prosecution and trial proceeded, Movant knew to

1  and actually did speak up when he disagreed with defense counsel's legal positions and

2  strategy.

3      Also noteworthy is that Movant advances no authority supporting the conclusion that

4  a defense attorney provides constitutionally ineffective assistance of counsel when he fails

5  to advise his client that the client is personally responsible to object to the stipulated

6  admission of exhibits in order to preserve the client's right to argue a violation of his

7  Confrontation Clause protections on appeal.  Undersigned was unable to identify such

8  authority.

9      Movant also fails to show he suffered prejudice in the trial court.  As Movant

10  suggests, even if he had been advised he could object and did object, the Court "might have

11  still admitted the exhibits" over his objection.  (Doc. 11-1 at 22)  This outcome appears

12  highly probable.  As Judge Campbell indicated in his Order denying Movant's Rule 29(c)

13  Motion to Dismiss Notwithstanding the Verdict (CR Doc. 110), Movant's "tax deficiency

14  was never an issue at trial[,]" and Movant himself "did not dispute that he earned millions

15  of dollars during the years in question, and he readily admitted that he never paid income

16  taxes on those earnings."  (CR Doc. 127 at 10)

17      Respecting prejudice on appeal, Movant contends there is a reasonable probability

18  the Ninth Circuit would have reversed Judge Campbell's admission of the exhibits over his

19  objection.  (*Id.* at 22-23)  Movant appears to base this conclusion on his discussion of the

20  Fourth Circuit's decision on appeal in *United States v. Williams*, 632 F.3d 129 (4th Cir.

21  2011).  (*Id.* at 23-24)  Movant's reliance on *Williams* is misplaced.  *Williams* involved a

22  stipulation regarding the existence of facts involving the testing of drugs at issue in the

23  charges, and the court permitted defendant's counsel to sign the stipulation and have the

24  stipulation read to the jury over the defendant's objection.  632 F.2d at 130.  The stipulation

25  was used by the trial court to answer the jury's question about defining intent to distribute.

26  *Id.* at 134.  Here, the stipulation was only to the admission of the evidence and not to its

27  truth.  Moreover, *Williams* says nothing on the question of ineffectiveness of counsel for

28  failure to inform a defendant of a responsibility to object to the admission of a stipulation.

Further, as argued by Respondent (Doc. 14 at 20), even if this issue had been preserved for appeal, District Judge Campbell laid out other, independent reasons for denial of a Confrontation Clause challenge in his order on Movant's motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c). (CR Doc. 127) Even if the issue had been preserved for appeal, defense counsel properly and accurately advised Movant about the effect of the stipulation for admission. Moreover, defense counsel undertook cross-examination of Agent Klepper, who testified about the stipulated exhibits. (CR Doc. 105 at 103, CR Doc. 106 at 23-67)

For the above reasons, undersigned recommends the Court find that Movant has failed to state a claim of ineffective assistance of counsel in Ground Four, and cannot show on the facts he alleges that there is a reasonable probability that, but for counsel's unprofessional errors, the results in his case would have been different. Accordingly, undersigned recommends that the Court deny Ground Four without an evidentiary hearing. *See* Section IV(C), *supra*.

### E.    Evidentiary hearing

In his reply, Movant asserts that the only question pending is whether he should be allowed an evidentiary hearing on his Amended Motion. (Doc. 17) To show that he is entitled to an evidentiary hearing, a movant must allege "specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (internal quotations and citations omitted). For the reasons set forth above, Movant has failed to establish he is entitled to an evidentiary hearing on any of the Grounds in the Amended Motion. *See* Section IV(C), *supra*. Thus, undersigned recommends that the Amended Motion be denied without an evidentiary hearing.

## VI.    CONCLUSION

As discussed above, the grounds raised in the Amended Motion are without merit such that they do not state a claim, and, thus, should be denied without an evidentiary hearing. Further, because Movant has not made a substantial showing of the denial of a

constitutional right in any ground of his Amended Motion, a certificate of appealability should be denied.

Accordingly,

**IT IS RECOMMENDED** that Movant Gary Steven Christensen's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 11) be denied without an evidentiary hearing.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability be denied because Movant has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.  The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen days within which to file a response to the objections.

Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003).  Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Rule 72, Federal Rules of Civil Procedure.

Dated this 6th day of November, 2019.

Honorable Deborah M. Fine
United States Magistrate Judge